UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JESUS BAEZ,                                    Civil No. 09-2121 (RHK/LIB)

                    Plaintiff,

v.                                             **REPORT AND**
                                               **RECOMMENDATION**

OFFICE ROSEMACK, LEE WHITTER,
PUTTER, DR. NELSON, JOYCE
PETTERSON, NURSE PETTERSON,
MICHELLE HOLTAN, DR. CLEGHORN,
NURSE CHERRY, WARDEN D. TERRELL,

                    Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to a

general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B),

upon the Motion of Defendants for Dismissal/Summary Judgment. The Plaintiff Jesus Baez

("Baez") appears pro se and the Defendants appear by Mary J. Madigan, Assistant United States

Attorney. For the reasons set forth below, the Court recommends that Defendant's Motion for

Dismissal/Summary Judgment be GRANTED.

## I.      BACKGROUND

Baez is an inmate at the Federal Medical Center in Rochester. On August 12, 2009, Baez

filed a Complaint alleging a number of claims against the Defendants. The facts alleged in the

Complaint are summarized as follows.

On November 17, 2008, Baez slipped and fell near the corner of the ice machine. (Compl. ¶

16). According to Baez, he slipped in water that was leaking from the ice machine. (Compl. ¶

16).

After falling on the floor, Plaintiff remained on the floor for a long period of time before anyone came to assist him.  (Compl. ¶ 17).  Plaintiff alleges that while lying on the floor he was traumatized and in severe pain.  (Compl. ¶ 17).  Eventually, Nurse Puffer[1] and Officer Rosemark found Plaintiff.  (Compl. ¶ 17).  Nurse Puffer examined Baez and told him to go to his bed and rest.  (Compl. ¶ 18).  Later the same night, Nurse Dennis Cleghorn, came into Baez's room and examined him.  (Compl. ¶ 18).  Cleghorn did not order any X-rays, but noticed redness on Baez's upper right thigh for which he prescribed pain medication and instructed the Plaintiff to apply ice to it.  (Add'l Exs. to Compl., [Docket No. 5]).  Additionally, Cleghorn directed Baez to go to sick call in the morning.  (Compl. ¶ 18).

Plaintiff went to sick call for the next two days.  (Compl. ¶ 18).  As a result, X-rays were taken on November 19.  The X-rays showed that Baez had a broken right hip for which Baez was sent to the Mayo Clinic.  (Compl. ¶ 18).  At the Mayo Clinic, additional X-rays demonstrated that Baez broke his right femoral neck bone, the bone that connects the femur to the hip.  (Compl. ¶ 18).  Baez asserts that he was in severe pain for over 72 hours and suffered four hours of surgery to place screws and pins in his hip to repair the damage.  (Compl. ¶ 18).

Due to the injury, Baez now needs a wheelchair or walker to move around.  (Compl. ¶ 19).  Furthermore, Baez needs to undergo additional surgery because the screws in his right hip were placed incorrectly.  (Compl. ¶ 19).

On February 19, 2009, Baez was in recovery from surgery and suffering from severe pain.  (Compl. ¶ 20).  As such, he requested pain medication from Nurse Peterson.[2]  (Compl. ¶

---

[1] Plaintiff refers to Nurse Puffer as Nurse Putter in his Complaint.  However, the Affidavit of Dana Puffer clarifies that Nurse Putter is actually Nurse Puffer. (Puffer Aff., [Docket No. 54]).  Therefore, the Court will use Nurse Puffer throughout this Report and Recommendation.

[2] Plaintiff refers to Nurse Peterson as Nurse Petterson throughout his Complaint.  However, it appears the correct spelling is Peterson.  (Peterson Dec. [Docket No. 61], ¶2).  Therefore, the Court will use Nurse Peterson throughout this Report and Recommendation.

20).  However, she responded that she was too busy and could not assist him.  (Compl. ¶ 20).

Baez suffered such severe pain that he called another nurse who helped him.  (Compl. ¶ 20).

Based on the above facts, Baez makes a number of claims.  In his first cause of action,

Baez contends that the Defendants violated the Eighth Amendment by acting in deliberate

indifference to his serious medical needs.  (Compl., p. 6).  Baez asserts that he suffered

unwarranted, unnecessary, and wanton infliction of pain when the Defendants delayed X-rays for

three days.  (Compl., p. 6).  The second basis for Baez's Eighth Amendment claim is difficult to

decipher.  It states that the Eighth Amendment was violated when "discovery of . . . a broken hip

from a fall at the ice machine/ . . . no sign was posted wet floor. [sic]"  (Compl., p. 6). The Court

interprets this to mean that the Eighth Amendment was violated because there was no sign

warning Baez that there was water on the floor which caused Baez to slip and fall.

Baez's second cause of action simply states that paragraphs 7 through 23 denied

Plaintiffs' Eighth Amendment rights.  (Compl., p. 6).  The Court interprets this to mean that the

Plaintiff contends his Eighth Amendment rights were violated when Nurse Peterson did not

immediately respond to his request for pain medication and prison staff did not immediately X-

ray his hip.

In his third cause of action, Baez argues that the Defendants acted negligently and

violated 18 U.S.C. § 4042 which requires in his words that the Bureau of Prisons:

1)  provide suitable quarters and provide safekeeping, care and subsistence of all
persons charged with or convicted of offenses against the United States

2)  provide for the protection, instruction and discipline of all persons charged with a
crime against the United States.  The def is in violation of this act.

3)  The basic elements of a prisoners' negligence claim are (1) a duty on the part of
prison to follow a certain standard of care to protect prisons' from unreasonable
risks;

4)      a failure by prison personnel to perform their duty.  Clearly <u>defendants</u> in the
instant case fail to carry out their duties with <u>allowing</u> the <u>floor</u> to be <u>wet</u>/without
<u>posting</u> a <u>floor sign</u> and <u>delaying</u> for over <u>3</u> <u>days</u> before x-raying my broken hip.

[sic] (Compl., pp. 7-8).  The Court reads this portion of the Complaint as alleging both a simple

negligence claim against the Defendants for their failure to warn of the slippery floor in front of

the ice machine and a medical malpractice claim against the medical personnel providing

treatment to him. Baez requests declaratory relief and monetary damages.  (Compl., pp. 8-9).

Presently before the Court is the Defendants' Motion for Dismissal/Summary Judgment.

Defendants assert that Baez has failed to state a claim for a constitutional violation, the

Defendants enjoy qualified immunity, that the tort claims do not present an issue of triable fact,

and that the Plaintiff failed to provide the required expert affidavits to support a medical

malpractice action under Minnesota law.  The Court will consider each of the Defendants'

arguments in turn.

## II.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment[3]

Defendants have brought a motion to dismiss and/or for summary judgment.   Generally,

materials outside the pleadings cannot be considered on a motion to dismiss, although a court

may consider the complaint, matters of public record, orders, materials embraced by the

complaint, and exhibits attached to the complaint in deciding a motion to dismiss. <u>See</u> <u>Porous</u>

<u>Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999).  In this case, both parties have

submitted and relied upon materials outside of the pleadings. Therefore, the Court analyzes

defendants' motion under the standard of review applicable to a motion for summary judgment.

---

[3] The Court acknowledges that Defendants have alternatively moved for dismissal of Plaintiff's claims under the
pleading standard of Fed. R. Civ. P. 12(b)(6). However, since the Court believes that the Defendants would still be
entitled to a dismissal of the claims against them even under the heightened standard of Fed. R. Civ. P. 56, the Court
need not consider the Rule 12(b)(6) standard in the interest of judicial economy.

See Fed.R.Civ.P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

Summary judgment is appropriate only when the evidence demonstrates that there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chemical Products Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). The nonmoving party may not rest on mere allegations or denials in its pleadings but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## III.    DISCUSSION

### A.    Constitutional Claims

#### 1.    Eighth Amendment Claims Against Defendants in their Official Capacity

"Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." Brown v. United States, 151 F.3d 800, 803-804 (8th Cir. 1998). As a sovereign power, the United States may be sued only to the extent that it has consented to suit by statute. United States Dept. of Energy v. Ohio, 503 U.S. 607, 615 (1992). Therefore, sovereign immunity holds that the United States, and its agencies and instrumentalities, including the BOP, are immune from suit, unless a waiver of such immunity has been "expressed unequivocally" by Congress. Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991).

In this case, Plaintiff alleges that the Defendants, as agents of the United States government through their employment with the BOP, have violated the constitution. However, to the extent that the Plaintiff sues the Defendants in their "official capacities," the United States is the real party in interest, and sovereign immunity bars those claims. Kentucky v. Graham, 473 U.S. 159, 166 (1985) (suits against public officials acting in their official capacities should be treated as suits against the public entity). Congress has not waived the sovereign immunity of the United States Government, or its agencies, for claims that their employees have violated the Constitution. Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998). A Federal prisoner may bring a Bivens claim against an officer individually, subject to the defense of qualified immunity, but "[t]he prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP . . . [because] his only remedy lies against the individual," with respect to the alleged constitutional deprivation. Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 62 (2001).

Accordingly, the Court recommends that Plaintiff's claims against the Defendants in their

"official capacities" be dismissed as a matter of law for lack of subject matter jurisdiction.

> **2.    Eighth Amendment Claims Against Defendants in their Individual Capacity for Failure to Provide Medical Treatment**

The doctrine of qualified immunity protects government officials "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982).   Courts make two inquiries when considering whether qualified immunity applies.

First, courts ask whether the facts alleged demonstrate that the officer's conduct violated a

constitutional right.  Sherbrooke v. City of Pelican Rapids, 513 F.3d 809, 813 (8th Cir. 2008).

Second, courts contemplate whether the constitutional right was clearly established at the time of

the violation, such that a reasonable person would have known that his conduct violated a

constitutional right.  Id.  In Pearson v. Callahan, the Supreme Court held that lower courts could

undertake the two steps in a qualified immunity analysis in any order.  129 S. Ct. 808, 818

(2009).

As to the second question, "[i]t is well established that the Eighth Amendment

prohibition on cruel and unusual punishment extends to protect prisoners from deliberate

indifference from serious medical needs."  Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000)

(citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  Thus, the existence of qualified immunity

in this case turns on the first question – whether the allegations against the Defendant constitute a

deprivation of a constitutional right.

The Eighth Amendment to the United States Constitution prohibits the government from

inflicting "cruel and unusual punishments" on those convicted of crimes.  See Rhodes v.

Chapman, 452 U.S. 337, 344-46 (1981). The prohibition against "cruel and unusual

punishments" is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." <u>Helling v. McKinney</u>, 509 U.S. 25, 32 (1993) (citation omitted).  To demonstrate an Eighth Amendment violation, a prisoner must show that (1) he had an objectively severe medical need, and (2) prison officials, knew of, but <u>deliberately</u> disregarded the need.  <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000).  "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."  <u>Dulany v. Carnahan</u>, 132 F.3d 1234, 1239 (8th Cir. 1997).

To demonstrate deliberate indifference, a prisoner who asserts that he was denied timely and appropriate medical care must show "more than negligence, more even than gross negligence...." <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995). Instead, "[d]eliberate indifference is akin to criminal recklessness." <u>Drake v. Koss</u>, 445 F.3d 1038, 1042 (8th Cir. 2006). Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health and (2) that the prison official failed to act reasonably to abate that risk. <u>Coleman v. Rahija</u>, 114 F.3d 778, 785 (8th Cir. 1997). Prison officials do not violate the Eighth Amendment when they reasonably respond to a known risk, even if their response does not prevent the threatened harm.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 844 (1994); <u>see</u> <u>also</u> <u>Krout v. Goemmer</u>, 583 F.3d 557, 567 (8th Cir. 2009).  However, "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." <u>Jolly</u>, 205 F.3d at 1096 (quotation omitted).

In this case, the Plaintiff contends that his Eighth Amendment rights were violated by the Defendants.  The Court finds it difficult to determine from the Plaintiff's submissions just what

specific conduct the Plaintiff alleges violated his constitutional rights.  Reading the Plaintiff's

Complaint liberally as it must, the Court determines that Plaintiff alleges his constitutional right

to medical treatment were violated when the  doctors did not give the Plaintiff an X-ray of his

hip until two days[4] after his fall, (Compl. pp 4-6), and when Nurse Peterson refused to give the

Plaintiff pain medication on February 19 immediately after he requested it.[5]  (Compl., p. 5).

Plaintiff contends that these actions amount to "deliberate indifference."  (Compl. p. 6).

Only "deliberate indifference" to a prisoner's serious medical needs violates the Eighth

Amendment.  Therefore, the issue in this case is whether the Plaintiff has offered enough

evidence to create a genuine issue of fact that the Defendants' conduct was deliberately

indifferent to his serious medical needs.  Beginning with Plaintiff's assertion that the delay in

administering X-rays violated the Eighth Amendment, Plaintiff and the Defendants agree that the

Plaintiff fell on November 17, 2008.  However, the Plaintiff contends that his treatment was

inadequate after his fall.  As the Inmate Injury and Assessment Form states, on the night the

Plaintiff fell, Defendant Cleghorn instructed the Plaintiff to ice the area and prescribed him

ibuprofen for the pain.  (Compl., p. 17).  The Inmate Injury and Assessment Form also shows

that the Plaintiff rated the pain to be moderate.  Id.  Furthermore, Nurse Puffer, who assisted

Nurse Cleghorn stated that he could "stand and walk, he did not report intolerable or great pain

and he did not have significant swelling on his right thigh." (Puffer Dec. [Docket no. 54], ¶ 5).

---

[4] The Plaintiff contends on p. 6 of his Complaint that X-rays were not taken until 3 days after he fell.  However, a review of the exhibits submitted in support of the Plaintiff's Complaint show that the accident took place on November 17, 2008 and X-rays were taken on November 19, 2008.  (Compl. & Addl. Exs. [Docket Nos. 1 & 5]).  Therefore, X-rays were taken two days rather than three days after the Plaintiff's accident.

[5] In Plaintiff's response to the Defendant's motion, the Plaintiff discusses the Defendants' alleged delay in providing pain medication to him on March 6, 2009 and argued that it too violated his Eighth Amendment rights.  (Docket No. 51).  However, in Plaintiff's Complaint, he does not allege a claim for an Eighth Amendment violation arising out of the March 6 incident.  Therefore, the Court declines to consider the Plaintiff's argument as to this claim.  Furthermore, even if the Court found that the Plaintiff made such an allegation in his Complaint, the Court would still grant summary judgment for the Defendants as to the March 6th incident for the same reasons it grants summary judgment to the Defendants for the February 19th  incident.

However, Nurse Puffer did observe slight redness on his upper thigh.  Id., ¶ 4.  Moreover, at the direction of Nurse Cleghorn, an independent contractor physician, Dr. Ali, reviewed the Inmate Injury and Assessment Form and did not believe that any additional treatment was needed. (Witter Dec. [Docket No. 59], ¶¶ 6-7).

The next day at sick call Physician's Assistant Lee Witter again provided Plaintiff with ibuprofen and concluded that he had a hip contusion. (Additional Exhibits re: Complaint [Docket No. 5], p. 5).  At that time, the Plaintiff was in pain.  Id., p. 7.  However, the Plaintiff did not report severe pain, was able to stand, and did not indicate a complete inability to walk. (Witter Dec., ¶ 8).  The next day, on November 19, 2008, Witter observed that the Plaintiff's condition had changed; the Plaintiff could not walk and reported worsening pain.   (Witter Dec., ¶ 10).  As such, Witter ordered an X-ray of the Plaintiff's hip.  (Additional Exhibits re: Complaint, p. 6). The X-ray showed a fracture to the right femoral neck.  Id., p. 10.

Even drawing all favorable inferences from the evidence offered by Plaintiff, his claim does not meet the "deliberate disregard" prong of the Eighth Amendment analysis.  No evidence exists in the record that any of the Defendant's conduct was "akin to criminal recklessness." Drake ex rel. Cotton v, 445 F.3d at 1042.  Here, it is undisputed that some treatment on several occasions was given to the Plaintiff.[6]  The documents submitted in support of Plaintiff's own Complaint allege that the Plaintiff was given ibuprofen on two occasions and told to ice his injury.  This treatment was entirely consistent with the Inmate Injury and Assessment Form which demonstrates that the Plaintiff only initially experienced moderate pain.  At sick call the day after the injury, the Plaintiff could stand and Witter believed the Plaintiff had a hip

---

[6] Plaintiff contends that this treatment was provided too late because he "layed on the floor for a long period of time before any assistance was given by Officer . . . Rosemark and Nurse Putter."  (Compl., p. 4).  However, no evidence has been presented by the Plaintiff regarding how long this time was such that the Court could conclude it was an unreasonably long time or that any delay in responding to his initial fall was itself in any way deliberate.

confusion.  No evidence suggests that the Defendants completely ignored the Plaintiff's request, but rather the evidence simply suggests that the defendant medical personnel arguably may have initially underestimated the seriousness of his injury.  No evidence has been presented that anyone, including the Plaintiff himself, believed that the hip was broken and required an X-ray immediately after the injury or the next day.  Nor has the Plaintiff presented any evidence from medical records or experts suggesting that the treatment given to him by the Defendants was so outside the reasonable standard of care for the medical profession that it was criminal recklessness.  Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) ("Nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment).   While Plaintiff may disagree with the medical treatment, a deliberate indifference claim does not arise from a prisoner's mere disagreement with the medical treatment he was given.  See Jolly, 205 F.3d at 1096.  None of the facts asserted in the Plaintiff's Complaint or in his affidavits submitted in opposition to the Defendants' motion indicate that prison officials acted with "deliberate disregard" to his apparent medical needs.

As to allegations of delays in providing medication, the Plaintiff states that he was in extreme pain after surgery, but was not provided his prescribed pain medication until several hours passed after he requested it.  "Delay in the provision of treatment or in providing examinations can violate inmates' rights when the inmates' ailments are medically serious or painful in nature."  Johnson-El v. Schoemehl, 878 F.2d 1043, 1055 (8th Cir. 1989).  Where a plaintiff alleges that a delay in treatment violated his constitutional rights, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment."  Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997). A plaintiff must present

"verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment."  Coleman, 114 F.3d at 784.

In this case, the Plaintiff has not provided any specific assertions as to how long his pain medicine was delayed. He claims that he did not receive assistance for several hours even though he was in extreme pain.  (Compl., Ex. D).   Plaintiff asked Nurse Peterson for medicine to treat his pain.  Nurse Peterson "was busy providing care for other inmates at the time the plaintiff requested his medication."  (Peterson Dec. [Docket No. 61], ¶ 3).  Another nurse provided him with the medication; thus, the Plaintiff eventually received pain medication.

Plaintiff has presented no evidence that he suffered any constitutionally significant harm from the alleged few hours during which he went without pain medication.  See Fenlon v. Quarterman, 350 Fed.Appx. 931, 933 (5th Cir. 2009) (granting motion to dismiss in favor of defendants because the plaintiff "did not show any constitutionally significant harm from the few hour during which he was denied pain medication").  While pain can suffice to meet the substantial harm requirement, not "every twinge . . . suffered as a result of delay in medical care is actionable."  Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000).  Rather, the pain must be substantial.  Here, Plaintiff has not created a triable issue of material fact as to whether the pain was substantial.  The Plaintiff simply asserts that he was in severe pain and that he was given his prescribed pain medication late.  But there is no objective evidence regarding the severity of the pain to support his allegations that his pain was substantial.  Plaintiff does not even state when his surgery took place so that the court could infer how long it had been since the surgery and the time of his request for medication; nor how much pain he was still in.  More importantly, he does not provide "verifying medical evidence" of the "detrimental effect of the delay in medical treatment."  Coleman, 114 F.3d at 784.  While undoubtedly the delay caused

him some pain, the fact that Plaintiff eventually received his medication and only suffered a short

delay before receiving pain medication does not create an actionable Eighth Amendment claim.

Lane v. Klinger, 25 Fed. Appx. 781, 783-84 (10th Cir. 2001) (finding that delay in providing

pain medication for three hours did not constitute substantial harm); Gutierrez v. Peters, 111 F.3d

1364, 1375 (7th Cir. 1997) (finding "isolated delays" in treatment did not support an Eighth

Amendment claim).

Moreover, Plaintiff's claims regarding a delay in providing pain medication must also fail

because Plaintiff has not provided any evidence that the Defendants acted with "deliberate

indifference" to a substantial risk of harm to the Plaintiff's health when delaying administration

of pain medication.  Here, Plaintiff has not provided any facts showing that the Defendants

consciously disregarded Plaintiff's health when delaying his pain medication.  "[A]n occasional

missed dose of medicine, without more, does not violate the Eighth Amendment."  West v.

Millen, 79 Fed.Appx. 190, 194 (7th Cir. 2003) (citing Zentmeyer v. Kendall County, 220 F.3d

805, 811-812 (7th Cir. 2000)).  "[A]lleged delays in administering pain medication may show

prison officials acted negligently," but the Plaintiff still has to allege facts showing that any of

the Defendants acted with deliberate indifference or criminal recklessness by refusing to give

him pain medication immediately after he requested it.  Burnett v. Dugan, 2011 WL 1002145, at

*6 (S.D. Cal. Mar. 21, 2011).

For these reasons, the Court finds that the Plaintiff has not demonstrated a genuine issue

of material fact that the Plaintiff's conduct violated the Eighth Amendment.  Therefore, the Court

recommends  the Defendants' Motion for Summary Judgment as to the Plaintiff's Eighth

Amendment claims based on inadequate medical treatment be granted because the Defendants

individually are protected by qualified immunity.

3.      Eighth Amendment Claims Against Defendants in their Individual
        Capacity for Failure to Warn Prisoners About Wet Floor

Conditions of confinement violate the Eighth Amendment if the conditions involve a

wanton and unnecessary infliction of pain.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Like

with Eighth Amendment claims challenging the sufficiency of medical treatment, "[t]o prevail

on an Eighth Amendment claim, an inmate must prove both an objective element, which asks

whether the deprivation was sufficiently serious, and a subjective element, which asks whether

the defendant officials acted with a sufficiently culpable state of mind." Choate v. Lockhart, 7

F.3d 1370, 1373 (8th Cir. 1993).  Prisoners meet the objective element when the conditions of

confinement pose a substantial risk of serious harm.  Simmons v. Cook, 154 F.3d 805, 807 (8th

Cir. 1998).  The subjective element is met when a defendant acts with deliberate indifference to

an inmate's health or safety.  Farmer v. Brennan, 114 S.Ct. 1970, 1978-79 (1994).

Turning to the facts of this case, the Plaintiff contends that the Defendants violated his

constitutional rights by failing to clean up the water near the ice machine.  Additionally, Plaintiff

maintains that water was always present around the ice machine and that the Defendants were

aware of this fact.  As such, the Defendant should have placed a warning sign near the ice

machine alerting the prisoners to possible slippery conditions.  (Smoke Aff. [Docket No. 77]).

However, these conditions do not constitute a substantial risk of serious harm that could

support an Eighth Amendment violation.  See Roblero-Barrios v. Ludeman, 2008 WL 4838726,

at *8 (D. Minn. Nov. 5, 2008) (finding that as an initial matter, courts can consider whether

unmarked wet and slipper floor are a condition of confinement that poses a substantial risk of

serious harm in violation of the Eighth Amendment) .  Generally, courts conclude that slippery

or wet floors do not pose a substantial risk of serious harm in violation of the United States

Constitution.  See Curry v. Federal Bureau of Prisons, 2007 WL 2580558 (D. Minn. Sep. 5,

2007)(collecting cases); <u>Eley v. Kearney</u>, 2005 WL 1026718, at \*5 (D. Del. Apr. 25, 2005)

("Plaintiff has not established that the alleged deprivation, an accumulation of water at the top of

a flight of stairs, constitutes an "objectively, sufficiently serious" deprivation. The court

concludes that, to the extent an accumulated slippery substance can be classified as a deprivation,

it is better classified as inadvertent or negligent rather than obdurate or wanton.").  Undoubtedly,

slippery floors can cause injuries, but they also "constitute a daily risk faced by members of the

public of large."  <u>Reynolds v. Powell</u>, 370 F.3d 1028, 1031 (10th Cir. 2004); <u>see</u> <u>also</u> <u>Snyder v.</u>

<u>Blankenship</u>, 473 F.Supp. 1208, 1212-13 (W.D. Va. 1979) (determining that personal injury

resulting from a failure to repair a leaking dishwasher did not violate the Eighth Amendment as a

matter of law because slip-and-fall injury is not comparable to a "prison-related" injury).   In

fact, even in cases where the wet floors were unmarked and defendants knew about the slippery

conditions, the failure to post wet floor signs or prevent injury did not rise above negligence or

constitute a constitutional violation.  <u>Roblero-Barrios</u>, 2008 WL 4838726, at \*8; <u>Carter v. Ark.</u>

<u>Dept. of Corrs.</u>, 2008 WL 4102719, at \*3 (E.D. Ark. Sep. 3, 2008).

 Because the Plaintiff has not provided any facts showing that the Defendants caused a

deprivation of his constitutional rights by allowing slippery floors in the prison, the Defendants'

summary judgment motion must be granted as to this claim.[7]

 **B.** **Torts Claims**

 The United States cannot be sued without its consent.  <u>Dalehite v. United States</u>, 346 U.S.

15 (1953).[8]  However, the Federal Tort Claims Act ("FTCA") functions as a waiver of the

---

[7] Defendants additionally contend that this claim should be dismissed for failure to exhaust administrative remedies, (Defs.' Mem.,p . 21-22), and that the constitutional claims against Dr. Nelson, Warden Terrell, and Andy Rosemark can be dismissed because they had no personal involvement with either the alleged failure to warn or the medical treatment of the Plaintiff. (Defs.' Mem., p. 30).  Since the Court dismisses Plaintiff's claims on the merits, it need not address the Defendant's additional arguments in support of dismissal.

[8] The FTCA allows the Plaintiff to sue the United States for tort claims, but not its individual employees, because federal employees have absolute immunity from common-law tort claims arising out of acts they undertake in their

sovereign immunity doctrine for suits against the United States for negligence.   28 U.S.C. §

1346(b); 28 U.S.C. § 2674.  Under the FTCA, an individual can sue the United States for

damages:

> for injury ... caused by the negligent or wrongful act or omission of any [Government
> employee] while acting within the scope of his ... employment, under circumstances
> where the United States, if a private person, would be liable ... in accordance with the law
> of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

### 1.      Negligence

Plaintiff argues that the Defendants' negligently failed to warn prisoners through use of a

sign that the floor was wet.[9]  (Compl, p. 8).  According to the Plaintiff, the Defendants'

negligence caused him to fall and break his hip.  Id.[10]

To demonstrate a negligence claim under Minnesota law, a Plaintiff must allege: "(1) the

existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty

is the proximate cause of his injury."  Myhre v. Fed'l Nat'l Mortg. Ass'n, 2010 WL 5422564, at

*3 (D. Minn. Dec. 27, 2010) (applying Minnesota law).  As a general rule, a possessor of land

has an affirmative duty to exercise reasonable care in inspecting and maintaining the premises in

a reasonably safe condition.  Mattson v. St. Luke's Hosp., 89 N.W.2d 743, 745 (1958).  In cases

where a plaintiff alleges that a dangerous condition existed on a landowner's property causing

him or her to be injured, the plaintiff must prove the landowner's actual or constructive

knowledge of a dangerous condition to establish a landowner's duty to use reasonable care to

---

official duties."  Osborn v. Haley, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679).  Therefore, the Court
considers all the Plaintiff's tort claims to be against the United States.

[9] In Plaintiff's response to the Defendants' motion, the Plaintiff contends that the Defendants negligently failed to
maintain a leaking ice machine which threatened prisoner safety in violation of the Eighth Amendment.  (Docket
No. 51, p. 8).  However, Plaintiff did not plead any claim for common law negligent failure to maintain the ice
machine against the Defendants in his Complaint. Therefore, the Court declines to consider this argument.

[10] The law of the state where the allegedly tortious conduct occurs governs whether the Government breached its
duty of care.  See Friedman v. United States, 2000 WL 876391, at *3 (6th Cir. June 21, 2000).

remove it.  <u>Messner v. Red Owl Stores</u>, 57 N.W.2d 659, 661 (Minn. 1953); <u>Otto v. City of St.</u>

<u>Paul</u>, 460 N.W.2d 359, 362 (Minn. Ct. App. 1990).  Constructive knowledge of a hazardous

condition may be established through evidence that it was present for such a sufficient period of

time as to constitute reasonable notice of the hazard. <u>Anderson v. St. Thomas More Newman</u>

<u>Ctr.</u>, 178 N.W.2d 242, 243-44 (1970).

In this case, the Plaintiff has failed to offer any evidence that the Defendants breached the

duty of care.   A plaintiff must "establish that the operator of the premises had actual knowledge

of the defect causing the injury or that it had existed for a sufficient period of time to charge the

operator with constructive notice of its presence."  <u>Wolvert v. Gustafson</u>, 146 N.W.2d 172, 173

(Minn. 1966). "But speculation as to who caused the dangerous condition, or how long it existed,

warrants judgment for the landowner." <u>Rinn v. Minnesota State Agr. Soc.</u>, 611 N.W.2d 361, 365

(Minn. Ct. App. 2000); <u>see</u> <u>also</u> <u>Bob Useldinger & Sons, Inc., v. Hangsleben</u>, 505 N.W.2d 323,

328 (Minn. 1993) (finding grant of summary judgment proper where nonmoving party engages

in mere speculation and conjecture without any concrete evidence).

In the instant case, the Plaintiff has not presented any evidence that the Defendants had

either actual or constructive notice that there was water or ice on the floor before he fell.  In his

affidavit opposing summary judgment, the Plaintiff merely states in a conclusory fashion that

"the floor was wet for a leaking ice machine that was known by the defendants [sic]."  (Baez

Dec. [Docket No. 74], ¶ 3).  Plaintiff additionally avers that "the ice machine at this institution

have/or overflow with ice the back-up will spill over into the floor [sic].  Thsi [sic] happens quite

frequently in all the ice machines."  <u>Id.</u>, ¶ 10.  Moreover, Plaintiff has provided the affidavit of

Gregory Smoke which states that "on November 17, 2008, I Gregory Smoke did observed the

area where Jesus Baez fell at the ice machine on unit 1-2.  In that area, water at time are on the floor [sic]." (Smoke Aff. [Docket No. 77]).

However, the evidence presented by the Plaintiff is insufficient to create a triable issue of genuine material fact as to actual or constructive knowledge on the part of the Defendants. Plaintiff presents no facts showing that the Defendant had actual knowledge that there was water on the floor before he slipped and fell.  As to constructive knowledge, no evidence has been presented demonstrating how long the water was on the floor on the specific day that the Defendant was injured.  A general assertion that water is always on the floor and a conclusory statement that it was on the floor the day of the accident is insufficient.  Rather, the Plaintiff must, beyond merely speculating, show that the hazard existed for a reasonable period of time before the actual accident occurred such that the Defendants in the exercise of reasonable care could have been expected to remedy the problem or place a warning sign near the ice machine. The Plaintiff has presented no evidence about whether the Defendant had constructive knowledge of the hazard created by the wet floor on the day that the Plaintiff was injured.  See Otis, 195 N.W.2d 432 (finding that plaintiff failed to show actual or constructive notice of a puddle of water that had accumulated on a bank floor on a rainy day, 20 minutes after the bank opened); Anderson, 178 N.W.2d at 243-44 (concluding business did not have constructive knowledge of puddle on floor absent proof that puddle had been on floor for appreciable period of time before accident).  Plaintiff must provide evidence beyond mere speculation and conjecture that the ice machine had been leaking water on the day the Plaintiff fell for a reasonable length of time such that the Defendants reasonably could be expected to remedy the situation.

Further, the Declaration of Gerald Drazjowski states that Mr. Drazjowski, the Heating,

Ventilating and Air Conditioning Supervisor at the prison, reviewed the maintenance records for

the ice machine near where the Plaintiff slipped and fell and learned that the ice machine was

drained, cleaned with sanitizer, rinsed with clean water and had a filter replaced on November

14, 2008.  (Drazjowski Dec. [Docket No. 63], ¶ 4).[11]  Mr. Drazjowski stated that no evidence

existed showing that the ice machine was not working properly or was leaking ice or water.  Id.;

Saari v. S.S. Kresge Co., 101 N.W.2d 427, 430 (Minn. 1960) (holding that plaintiff failed to

show constructive notice of gum on a stair where evidence existed showing that defendant had

been diligent in keeping the premises clean and the length of time the gum remained on the stair

remained undetermined).  Plaintiff has not presented any evidence that the ice machine was

leaking ice or water in the three days between Mr. Drazjowski's inspection and his fall.  The

Plaintiff has not presented evidence which would allow a reasonable jury to infer that water

accumulated in front of the ice machine for a sufficient length of time prior to his fall that it

reasonably would put the Defendants on constructive notice of a dangerous condition.

Therefore, the Court recommends that the Defendant's summary judgment motion be granted as

to the Plaintiff's negligence claim.

## 2.    Medical Malpractice

Additionally, Plaintiff argues that the Defendants negligently delayed in x-raying his hip

after his fall which caused him further damage.  (Pl.'s Mem., p. 8).  The Plaintiff argues that this

constitutes medical malpractice.[12]

The Court concludes that the Plaintiff's medical malpractice tort claim must be dismissed

because the Plaintiff has not complied with Minn. Stat. § 145.682.  That statue requires that

---

[11] This is only three days before Plaintiff's fall.

[12] Based on a liberal reading of the Complaint, the Court does not find that the Plaintiff asserts a medical malpractice claim for any delays he faced in obtaining pain medication from Nurse Peterson and Nurse Holtan.

plaintiffs in a medical malpractice case furnish an expert review affidavit in support of his or her claims:

> The first affidavit ('expert review affidavit') <u>must be submitted with the complaint</u> and state that before commencing the lawsuit, plaintiff's attorney <u>reviewed the facts of the case with a medical expert</u> who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff....

<u>Bellecourt v. United States</u>, 784 F.Supp. 623, 636 (D. Minn. 1992).  If the plaintiff proceeds pro se, the plaintiff must file his or her own affidavit of expert review in lieu of an attorney's affidavit. Minn.Stat. § 145.682, subd. 5. Within 180 days of commencing litigation, the plaintiff must serve a second affidavit that identifies the experts expected to testify about malpractice or causation and states "the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." Minn.Stat. § 145.682, subds. 2, 4(a). Answers to interrogatories satisfy the substantive requirements of the second affidavit if they are signed by the plaintiff's attorney and each expert. Minn.Stat. § 145.682, subd. 4(a). If a medical malpractice complainant fails to provide either of the affidavits required in Minn. Stat. § 145.682, the statute provides for "mandatory dismissal." Minn.Stat. § 145.682, subd. 6; <u>Lindberg v. Health Partners, Inc.</u>, 599 N.W.2d 572 (Minn. 1999).   Minnesota courts have "stressed that plaintiffs must adhere to strict compliance with the requirements of Minn.Stat. § 145.682." <u>Broehm v. Mayo Clinic Rochester</u>, 690 N .W.2d. 721, 726 (Minn. 2005).

Here, the Defendant has submitted an affidavit from the doctor who performed his hip surgery at the Mayo Clinic in Rochester, Minnesota.  (Taunton Aff. [Docket No. 100]).  Also, attached to the affidavit are the medical records regarding the operation on the Plaintiff's hip. (Taunton Aff., Ex. 1 [Docket No. 11]).   The affidavit in its entirety alleges:

1.      I am a medical doctor at the Mayo Clinic, Rochester, Minnesota.

2.      I am fully competent to make this affidavit, to the best of my knowledge that all the facts stated that is [sic] attached to this affidavit is [sic] true and correct, (Operative Report-Orthopedic Surgery, 6-471-439, 03-Jan-2011, Mr. Jesus Baez).

3.      That my assistant E. C. Nguyen, M.D. did assist performing the surgery on Mr. Jesus Baez that is described in the attached document on the 3rd of January, 2011.

(Taunton Aff., Ex. 1 [Docket No. 11]).

The content of the affidavit does not meet either of the affidavit requirements of Minn. Stat. § 145.682.   It does not meet the first affidavit requirement, the affidavit of expert review, because it does not aver that any of the Defendants "deviated from the applicable standard of care and thereby injured" the Plaintiff. [13]  Bellecourt, 784 F.Supp. at 636.  Likewise, the affidavit is not a proper affidavit of expert testimony under Minn. Stat. § 145.682, subds. 2, 4 because it does not set forth "specific details concerning their experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiffs allege violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to them." Sorenson v. St. Paul Ramsey Med. Ctr., 457 N.W.2d 188, 193 (Minn. 1990).

The Plaintiff argues that this case falls under an exception to Minn. Stat. § 145.682 which states that an affidavit is not necessary if expert testimony is not needed to establish negligence. (Pl's Mem., p. 8).  See Minn. Stat.  § 145.682, subd. 2.  However, the Plaintiff's case requires expert testimony because he asserts that the Defendant failed to diagnose the severity of his hip injury and is beyond the common knowledge of a lay person.  Bellecourt, 784 F.Supp. at 637-38 (expert testimony required for failure-to-diagnose claim); Sorenson v. St. Paul Ramsey Med. Ctr., 457 N.W.2d 188, 193 (Minn. 1990) (expert testimony required for claims of failure to diagnose and failure to properly treat condition); Plutshack v. Univ. of Minn. Hosps., 316 N.W.2d 1, 5 (Minn. 1982) (stating that claims for "negligent care and treatment" require expert

---

[13] Additionally, the Court notes that the Plaintiff's affidavit was not filed within 60 days of service of  the Complaint as required under Minn. Stat. § 145.682, subd. 6.  However, the Court granted the Plaintiff extensions during which to file his affidavit.  See Docket Nos. 34, 95.

testimony).  The exception under Minn. Stat. § 145.682, subd. 2 is designed for situations where it is plainly obvious that the defendant deviated from the standard of care such as if "a surgeon obviously amputated the wrong limb." <u>Allan v. Ludeman</u>, 2011 WL 978768, at *14 n. 13 (D. Minn. Jan. 18, 2010).  In the present case, however, the Plaintiff's claims require expert testimony to show that the Defendants violated the applicable standard of care.

Based on the above reasoning, the Plaintiff's failure to provide the affidavits required by Minn. Stat. § 145.682 proves fatal to his medical malpractice claim. Therefore, this Court recommends that the Court dismiss the Plaintiff's medical malpractice as a matter of law.

## VI.   CONCLUSION

### IT IS HEREBY RECOMMENDED THAT:

1. Defendants' Motion to Dismiss for Dismissal/Summary Judgment (Doc. No. 51) is GRANTED; and

2. Plaintiff's Motion in Opposition of Defendants' Memorandum in Support of Motion to Dismiss for Summary Judgment (Docket NO. 71) is DENIED.


Dated: August 8, 2011                                  s/Leo I. Brisbois

                                                       Leo I. Brisbois
                                                       U.S. MAGISTRATE JUDGE


## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 22, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for

in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeal.